UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.

QUISQUEYA CARGO SHIPPING CORP. and
BOUBOUL IMPORT-EXPORT

Plaintiffs,

vs.

CARIBPRO VI IMPORTS, LLC,

Defendant.

_______________________________________/

# COMPLAINT

Plaintiffs, QUISQUEYA CARGO SHIPPING CORP. and BOUBOUL IMPORT-EXPORT, by and through theirs undersigned attorney, sue Defendant CARIBPRO VI IMPORTS, LLC, and allege as follows:

## JURISDICTION AND VENUE

1. This is a complaint for Breach of Contract, Conversion, Unjust Enrichment and Tortious Interference with Advantageous Business Relationship.

2. This is an action involving the diversity of citizenship of the parties, as more fully described below, and for damages in excess of $75,000 pursuant to 28 U.S.C. § 1332. This Court has related claim jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367.

3. This Court has personal jurisdiction over the defendant CARIBPRO VI IMPORTS, LLC as it was doing business in Miami-Dade County, Florida and/or Broward County, Florida at all times materials to allegation/events described below.

4. Pursuant to a forum selection clause in the agreement between QUISQUEYA and BOUBOUL, this action must be brought in a court located in Florida.

5. Venue is proper in this district under 28 U.S.C. §1391(a) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## THE PARTIES

6. Plaintiff QUISQUEYA CARGO SHIPPING CORP. ("QUISQUEYA") is, and at all times mentioned herein was, a corporation organized and existing under the laws of the State of Florida, having a principal place of business at 3163 N.W. South River Drive, Miami, Florida 33142.

7. Plaintiff BOUBOUL IMPORT-EXPORT ("BOUBOUL") is, and at all times mentioned herein was, a corporation organized and existing under the laws of Haiti, having a principal place of business at 11 Delmas 60, Port au Prince, Haiti.

8. Upon information and belief, Defendant CARIBPRO VI IMPORTS, LLC ("CARIBPRO") is, and at all times mentioned herein was, a corporation with its principal place of business at 3847 28th Avenue, Temples Hills, Maryland 20748.

## FACTS

9. BOUBOUL is a Haitian corporation which imports products into Haiti, including cement.

10. BOUBOUL retained QUISQUEYA to act as its broker and/or representative to purchase cement to be shipped to Haiti for use in a variety of construction projects, including but not limited to reconstruction following the earthquake in Haiti.

11. In September 2011, QUESQUEYA was in contact with CARIBPRO regarding the purchase and shipment of cement to Haiti for BOUBOUL.

12. On or about September 7, 2011, QUISQUEYA and CARIBPRO entered into a Non-Circumvention Agreement regarding future business and financial transactions between themselves and third parties.

13. In September 2011, after negotiations between the Parties and cement supplier Caribbean Cement Company Limited ("Caribbean Cement")(a Jamaican company located in Kinston, Jamaica), BOUBOUL, by and through its broker and/or representative QUISQUEYA, agreed to purchase 40,000 bags of Portland Cement from CARIBPRO on a "Cost, Insurance and Freight" basis for the purchase price of USD$172,000.00.

14. On September 20, 2011, Caribbean Cement issued its Proforma Invoice, in the amount of USD$129,600, to CARIBPRO. A copy of the invoice is attached hereto as Exhibit "A".

15. In order to complete the transaction and obtain the cement, BOUBOUL issued a Purchase Order for the purchase, loading, shipment and delivery of 40,000 bags of Portland Cement from Kingston, Jamaica to the Port of Jeremie, Haiti, for a total of USD$172,000.00. A copy of the Purchase Order is attached as Exhibit "B".

16. As the purchase agreement called for an initial 70% payment, BOUBOUL sent a wire transfer on or about October 6, 2011, in the amount of $122,000.00, from its account at Sogebank in Haiti to CARIBPRO's account with Bank of America in Maryland. A copy of the wire-transfer application[1] is attached hereto as Exhibit "C".

---

[1] Portions of the wire-transfer details have been redacted.

17. Upon information and belief, CARIBPRO may have sent some of or the entire USD$122,000 received from BOUBOUL to Caribbean Cement to secure the purchase of the cement; however, CARIBPRO failed to make and secure arrangements for loading, shipment and delivery of the cement to BOUBOUL in Haiti. A copy of the wire-transfer request from CARIBPRO to Caribbean Cement[2] is attached hereto as Exhibit "D".

18. Instead of loading, shipping and delivering the cement as agreed by the Parties, CARIBPRO demanded payment of the remaining balance of USD$50,000.00 before securing a vessel to load, ship and deliver the cargo of cement from Jamaica to Haiti.

19. On October 23, 2011, QUISQUEYA, anxious to complete the agreement and transaction for its customer, BOUBOUL, and get the cargo of cement loaded, shipped and delivered from Jamaica to Haiti without further delay, agreed to pay CARIBPRO the amount of USD$35,000.00, and pay the $15,000.00 remaining balance upon arrival of the vessel to ship the cargo at Kingston, Jamaica.

20. On October 24, 2011, QUISQUEYA sent a wire transfer, in the amount of USD$35,000.00 to CARIBPRO in order for CARIBPRO to secure a vessel to load, ship and delivery the cargo of cement to BOUBOUL as agreed. A copy of the wire-transfer request[3] is attached hereto as Exhibit "E".

21. Notwithstanding receiving USD$157,000.00 from BOUBOUL and QUISQUEYA for the purchase of cement from Caribbean Cement and to load, ship and deliver the cargo of cement to BOUBOUL in Haiti, CARIBPRO has failed to make any

[2] Portions of the wire-transfer details have been redacted.
[3] Portions of the wire-transfer details have been redacted.

arrangements to ship the cement to Haiti, nor has it agreed to release the cement to BOUBOUL and allow BOUBOUL to make its own arrangements to ship the cement from Jamaica to Haiti.

22. For its role as broker, QUISQUEYA was supposed to receive a commission from CARIBPRO, for securing the purchase of cement by BOUBOUL, in the amount of $00.20 per bag and a total commission of $8,000.00. CARIBPRO has refused to communicate with QUISQUEYA regarding completing the agreement, shipment of the cement and payment of the commission.

23. Upon information and belief, CARIBPRO travelled from Maryland to Haiti to meet with representatives of BOUBOUL, without contacting QUISQUEYA, for the purpose to excluding QUISQUEYA from the commission and/or other financial benefits of this transaction and future transactions, notwithstanding the Non-Circumvention Agreement between CARIBPRO and QUISQUEYA.

24. All conditions precedent to this action have been met or waived.

**COUNT I – BOUBOUL'S CLAIM FOR BREACH OF CONTRACT**

Plaintiff repeats, re-alleges and hereby incorporates herein by reference, as though specifically pleaded herein, the allegations of paragraphs 1 through 24.

25. CARIBPRO contracted and agreed to sell, load, ship and deliver 40,000.00 bags of Portland Cement in good order and condition to BOUBOUL, and as evidence of that agreement BOUBOUL issued its Purchase Order. *See Plaintiffs' Exhibit "B".*

26. Pursuant to the terms of the Purchase Order, BOUBOUL paid CARIBPRO the amount of USD$122,000.00 for the purchase of the cement from Caribbean Cement

and for loading, shipping and delivering the cargo of cement from Jamaica to Haiti. *See Plaintiffs' Exhibit "C".*

27. CARIBPRO breached its contract with BOUBOUL by failing to secure, load, ship and deliver the cargo and as a proximate result thereof the BOUBOUL has been damaged in an amount in excess of $122,579.00. Plaintiff reserves the right to amend this amount at the time of trial.

**COUNT II – BOUBOUL'S CLAIM FOR CONVERSION**

Plaintiff repeats, re-alleges and hereby incorporates herein by reference, as though specifically pleaded herein, the allegations of paragraphs 1 through 24.

28. CARIBPRO accepted $122,000.00 from BOUBOUL to purchase, load, ship and deliver a cargo of cement to BOUBOUL. *See Plaintiffs' Exhibit "C".*

29. CARIBPRO failed to deliver the deliver the cement cargo after receiving payment of $122,000.00, instead CARIBPRO converted the said payment for its own use that was then property of BOUBOUL, and BOUBOUL has been damaged in an amount in excess of $122,579.00. Plaintiff reserves the right to amend this amount at the time of trial. *See Plaintiffs' Exhibit "C".*

**COUNT III – BOUBOUL'S CLAIM FOR UNJUST ENRICHMENT**

Plaintiff repeats, re-alleges and hereby incorporates herein by reference, as though specifically pleaded herein, the allegations of paragraphs 1 through 24.

30. CARIBPRO accepted $122,000.00 from BOUBOUL to purchase, load, ship and deliver said cement cargo to BOUBOUL. *See Plaintiffs' Exhibit "C".*

31. CARIBPRO failed to deliver the deliver the cement cargo after receiving payment of $122,000.00; instead CARIBPRO may have kept the said payment for its

own benefit or use, and unjustly enriched itself. BOUBOUL has been damaged in an amount in excess of $122,579.00. Plaintiff reserves the right to amend this amount at the time of trial. *See Plaintiffs' Exhibit "C".*

32. BOUBOUL has no other adequate remedy at law.

**COUNT IV – QUISQUEYA'S CLAIM FOR BREACH OF CONTRACT**

Plaintiff repeats, re-alleges and hereby incorporates herein by reference, as though specifically pleaded herein, the allegations of paragraphs 1 through 24.

33. CARIBPRO contracted and agreed to sell, load, ship and deliver 40,000.00 bags of Portland cement in good order and condition, and as evidence of that agreement BOUBOUL issued its Purchase Order. QUISQUEYA acting as the broker and/or representative for BOUBOUL executed the Purchase Order on behalf of BOUBOUL. *See Plaintiffs' Exhibit "B".*

34. Pursuant to the terms of the Purchase Order, BOUBOUL paid CARIBPRO the amount of USD$122,000.00 for the purchase of the cement from Caribbean Cement and for loading, shipping and delivering the cargo of cement from Jamaica to Haiti. *See Plaintiffs' Exhibit "C".*

35. Pursuant to the terms of a subsequent agreement on payment terms, QUISQUEYA agreed to pay CARIBPRO the amount of USD$35,000.00 to secure a vessel to load, ship and delivery the cement cargo. QUISQUEYA sent a wire transfer, in the amount of USD$35,000.00 to CARIBPRO. *See Plaintiffs' Exhibit "E".*

36. CARIBPRO breached its contract with QUISQUEYA by failing to secure the order of cement and a vessel which was to be used to load, ship and deliver the cargo, and as a proximate result thereof the QUISQUEYA has been damaged in an amount in

excess of $35,000.00 advanced for the charter of the vessel and unpaid commission in the amount $8,000.00. Plaintiff reserves the right to amend this amount at the time of trial.

**COUNT V – QUISQUEYA'S CLAIM FOR CONVERSION**

Plaintiff repeats, re-alleges and hereby incorporates herein by reference, as though specifically pleaded herein, the allegations of paragraphs 1 through 24.

37. CARIBPRO accepted $35,000.00 from QUISQUEYA to charter a vessel in order to load, ship and deliver said cargo of cement to BOUBOUL. *See Plaintiffs' Exhibit "E".*

38. CARIBPRO failed to charter a vessel to be used to deliver the cement cargo after receiving payment of $35,000.00, instead CARIBPRO converted the said payment for its own use that was then property of QUISQUEYA, and QUISQUEYA has been damaged in an amount in excess of $35,000.00. Plaintiff reserves the right to amend this amount at the time of trial. *See Plaintiffs' Exhibit "E".*

**COUNT VI – QUISQUEYA'S CLAIM FOR UNJUST ENRICHMENT**

Plaintiff repeats, re-alleges and hereby incorporates herein by reference, as though specifically pleaded herein, the allegations of paragraphs 1 through 24.

39. CARIBPRO accepted $35,000.00 from QUISQUEYA to charter a vessel in order to load, ship and deliver said cargo of cement to BOUBOUL. *See Plaintiffs' Exhibit "E".*

40. CARIBPRO failed to charter a vessel in order to load, ship and deliver said cargo of cement to BOUBOUL after receiving payment of $35,000.00 from QUISQUEYA; instead CARIBPRO may have kept the said payment for its own benefit

or use, and unjustly enriched itself. QUISQUEYA has been damaged in an amount in excess of $35,000.00. Plaintiff reserves the right to amend this amount at the time of trial.

41. QUISQUEYA has no other adequate remedy at law.

**COUNT VII**
**QUISQUEYA'S CLAIM FOR TORTIOUS INTERFERENCE WITH ADVANTAGOUS BUSINESS RELATIONSHIP**

Plaintiff repeats, re-alleges and hereby incorporates herein by reference, as though specifically pleaded herein, the allegations of paragraphs 1 through 24.

42. BOUBOUL retained QUISQUEYA to act as its broker and/or representative to purchase cement to be shipped to Haiti for use in a variety of construction projects. CARIBPO has knowledge of the relationship between Plaintiffs.

43. As evidence of that relationship, QUISQUEYA helped secure an agreement between BOUBOUL and CARBPRO to purchase cement to be shipped from Jamaica to Haiti. *See Plaintiffs' Exhibit "B".*

44. Instead of completing that transaction for the mutual benefit of all the Parties, CARIBPRO has instead failed to perform by not delivering a single bag of cement as agreed and has retained for its own benefit anywhere between USD$35,000.00 and USD$157,000.00.

45. QUISQUEYA and CARIBPRO also entered into a Non-Circumvention Agreement as evidence of their desire to work together for the purpose of arranging business and financial transactions.

46. CARIBPRO has intentionally and unjustifiably interfered with the relationship between Plaintiffs by: (a) failing to perform; and, (b) travelling to Haiti to

meet directly with BOUBOUL for the purpose of excluding QUISQUEYA from the financial benefits of this transaction but also to exclude QUISQUEYA from doing future business with BOUBOUL.

47. As a result of CARIBPRO's failure to perform, actions and conduct, QUISQUEYA's business relationship with BOUBOUL has been damaged, including but not limited to loss of commissions on this transaction, but also future transactions involving BOUBOUL.

## ***TRIAL BY JURY***

48. Plaintiffs demand a trial by jury on all issues.

WHEREFORE, the Plaintiffs, QUISQUEYA CARGO SHIPPING CORP. and BOUBOUL IMPORT-EXPORT demand judgment against the Defendant, CARIBPRO VI IMPORTS, LLC, and prays that this Court enters an Order as follows:

1. That Defendant CARIBPRO VI IMPORTS, LLC liable for all damages suffered by Plaintiffs resulting from the acts alleged herein;
2. That Defendant CARIBPRO VI IMPORTS, LLC be order to complete the transaction by specific performance, including but limited to completing the purchase of the cement from Caribbean Cement Company Limited, delivering the cargo of cement to BOUBOUL in Haiti and paying the commission owed to QUISQUEYA as originally agreed to by the parties;
3. Or in the alternative, that Defendant CARIBPRO VI IMPORTS, LLC be order to instruct Caribbean Cement Company Limited to release the purchased cement to BOUBOUL so that BOUBOUL can arrange shipment to Haiti;

4. That Defendant CARIBPRO VI IMPORTS, LLC be ordered to pay any and all damages suffered by Plaintiffs resulting from the acts alleged herein;

5. That Defendant be compelled to account to Plaintiffs for any and all profits derived by it from its acts complained of herein;

6. That the Court award Plaintiffs damages in an amount to be proven at trial, together with prejudgment interest:

7. That the Court award Plaintiffs their full costs and reasonable attorneys' fees; and,

8. For such and other further relief that the Court deems just and proper.

Dated: December 30, 2011
Miami, Florida

Respectfully submitted,

By: ***/S/Stephen Field***

Stephen D. Field, ESQ.
Florida Bar No. 5541111
STEPHEN D. FIELD, P.A.
Dadeland Square at the Greenery Mall
7700 North Kendall Drive
Suite 505
Miami, Florida 33156
Telephone: (305) 798-1335
Facsimile: (305) 271-8302
e-mail: steve@field-law.com
*Counsel for Plaintiffs*