UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 11-24656-CIV-SEITZ/SIMONTON

QUISQUEYA CARGO SHIPPING CORP. and
BOUBOUL IMPORT-EXPORT

        Plaintiffs,
vs.

CARIBPRO VI IMPORTS, LLC,

        Defendant.
_____/

## ORDER GRANTING MOTION FOR FINAL DEFAULT JUDGMENT

THIS ACTION is before the Court on Plaintiff Quisqueya Cargo Shipping Corp.'s Motion for Final Default Judgment [D.E. 25]. This action arises from an agreement to deliver cement to Haiti between Plaintiff Quisqueya Cargo Shipping Corp. (QUISQUEYA) and Defendant. Problems arose with delivery of and payment for the cement and this suit followed. The seven count Complaint includes three counts by Plaintiff BOUBOUL IMPORT-EXPORT, which have been dismissed, and four counts by QUISQUEYA. As set forth below, QUISQUEYA is entitled to entry of a final default judgment.

### I. FINDINGS OF FACT

**A.    PROCEDURAL HISTORY**

1.    On December 30, 2011, Plaintiffs filed their complaint [D.E. 1] against Defendant. QUISQUEYA alleged claims for breach of contract, conversion, unjust enrichment and tortious interference with an advantageous business relationship. On March 20, 2012, Plaintiff Bouboul Import-Export filed its Notice of Voluntary Dismissal for its counts for breach of contract, conversion and unjust enrichment [D.E. 9]. On the

same day, QUISQUEYA and Defendant filed a Stipulation of Settlement and Joint Motion for Dismissal and Order of Dismissal With Prejudice [D.E. 10]. The next day, March 21, 2012, the Court entered its Order of Final Dismissal [D.E. 11], in which it dismissed the case with prejudice but retained jurisdiction to enforce the settlement agreement.

2. On May 9, 2012, QUISQUEYA filed a Motion to Enforce the Settlement Agreement [D.E. 12]. On June 6, 2012, the Court granted the Motion in part [D.E. 13] by ordering Defendant to pay the settlement funds to Plaintiff's counsel by a date certain and, if Defendant failed to pay, allowing Plaintiff to file a motion to reopen the case and to set aside the release QUISQUEYA had signed in anticipation of receiving the settlement funds. Defendant did not pay and, on July 11, 2012, QUISQUEYA moved to set aside the release and reopen the case [D.E. 15].

3. On July, 17, defense counsel filed a motion to withdraw [D.E. 16], which the Court granted on July 24, 2012 [D.E. 17]. The Court ruled that the Defendant shall have new counsel file a notice of appearance and a response to Plaintiff's motion to set aside the release and to reopen the case [D.E. 15]. The Court also ruled that the Defendant could not represent itself in this matter and if Defendant failed to comply with the Order, the Court would grant Plaintiff's motion and enter a default against the Defendant upon the filing of a motion by Plaintiff [D.E. 17]. Defendant failed to comply with the Court's Order.

4. On October 4, 2012, this Court issued an Order Granting Plaintiff's Motion to Set Aside Release and Reopen Case [D.E. 19]. On October 9, 2012, this Court issued an Order Granting Plaintiff's Motion for Default [D.E. 21].

**B.    THE PARTIES**

5.    Plaintiff QUISQUEYA is a corporation organized and existing under the laws of the State of Florida, having a principal place of business at 3163 N.W. South River Drive, Miami, Florida 33142.

6.    Plaintiff BOUBOUL IMPORT-EXPORT ("BOUBOUL") is a corporation organized and existing under the laws of Haiti, having a principal place of business at 11 Delmas 60, Port au Prince, Haiti.

7.    Defendant, CARIBPRO VI IMPORTS, LLC ("CARIBPRO") is a corporation with its principal place of business at 3847 28th Avenue, Temples Hills, Maryland 20748.

**C.    FACTS**

8.    BOUBOUL imports products into Haiti, including cement.

9.    BOUBOUL retained QUISQUEYA to act as its broker to purchase cement to be shipped to Haiti for use in a variety of construction projects, including but not limited to reconstruction following the earthquake in Haiti.

10.    In September 2011, QUESQUEYA was in contact with CARIBPRO regarding the purchase and shipment of cement to Haiti for BOUBOUL.

11.    On or about September 7, 2011, QUISQUEYA and CARIBPRO entered into a Non-Circumvention Agreement regarding future business and financial transactions between themselves and third parties. *See* Ex. F to Motion.

12.    In September 2011, after negotiations between the Parties and cement supplier Caribbean Cement Company Limited ("Caribbean Cement")(a Jamaican company located in Kingston, Jamaica), BOUBOUL, by and through its broker and/or

representative QUISQUEYA, agreed to purchase 40,000 bags of Portland Cement from CARIBPRO on a "Cost, Insurance and Freight" basis for the purchase price of $172,000.00.

13. On September 20, 2011, Caribbean Cement issued its Proforma Invoice, in the amount of $129,600, to CARIBPRO.

14. In order to complete the transaction and obtain the cement, BOUBOUL issued a Purchase Order for the purchase, loading, shipment and delivery of 40,000 bags of Portland Cement from Kingston, Jamaica to the Port of Jeremie, Haiti, for a total of $172,000.00.

15. The purchase agreement for the cement called for an initial 70% payment; accordingly, BOUBOUL sent a wire transfer on or about October 6, 2011, in the amount of $122,000.00, from its account at Sogebank in Haiti to CARIBPRO's account with Bank of America in Maryland.

16. CARIBPRO appears to have sent the $122,000.00 received from BOUBOUL to Caribbean Cement to secure the purchase of the cement; however, CARIBPRO failed to make and secure arrangements for loading, shipment and delivery of the cement to BOUBOUL in Haiti.

17. Instead of loading, shipping and delivering the cement as agreed by the Parties, CARIBPRO demanded payment of the remaining balance of $50,000.00 before securing a vessel to load, ship and deliver the cargo of cement from Jamaica to Haiti.

18. On October 23, 2011, QUISQUEYA, anxious to complete the agreement and transaction for its customer, BOUBOUL, and get the cargo of cement loaded, shipped and delivered from Jamaica to Haiti without further delay, entered into a

4

separate agreement with CARIBPRO wherein it agreed to loan CARIBPRO the amount of $35,000.00, in order to charter a vessel to ship the cement from Jamaica to Haiti.

19. On October 24, 2011, QUISQUEYA sent a wire transfer, in the amount of $35,000.00 to CARIBPRO in order for CARIBPRO to secure a vessel to load, ship and deliver the cargo of cement to BOUBOUL as agreed.

20. Notwithstanding receiving $122,000.00 from BOUBOUL for the purchase of cement and the $35,000.00 loan from QUISQUEYA to load, ship and deliver the cargo of cement to BOUBOUL in Haiti, CARIBPRO initially failed to make any arrangements to ship the cement to Haiti, nor did it agree to release the cement to BOUBOUL and allow BOUBOUL to make its own arrangements to ship the cement from Jamaica to Haiti. As a result, the Plaintiffs initiated this lawsuit.

21. For its role as broker, QUISQUEYA was supposed to receive a commission from CARIBPRO, for securing the purchase of cement by BOUBOUL, in the amount of $00.20 per bag and a total commission of $8,000.00. CARIBPRO refused to communicate with QUISQUEYA regarding the completion of the agreements, shipment of the cement and payment of the commission.

22. CARIBPRO travelled from Maryland to Haiti to meet with representatives of BOUBOUL, without contacting QUISQUEYA, for the purpose to excluding QUISQUEYA from the commission and/or other financial benefits of this transaction and future transactions, notwithstanding the Non-Circumvention Agreement between CARIBPRO and QUISQUEYA.

23. CARIBPRO eventually delivered the cargo of cement to BOUBOUL in Haiti; however, CARIBPRO failed to reimburse the $35,000.00 loaned by QUISQUEYA or pay the $8,000.00 commission owed to QUISQUEYA.

24. QUISQUEYA ultimately agreed to compromise its claim and agreed to accept $35,000.00 as a settlement, foregoing its claim for the $8,000.00 commission and tortious interference of its business relationship with BOUBOUL; however, CARIBPRO failed to pay the settlement.

25. QUISQUEYA has been compelled to incur legal fees and costs in connection with pursuing its claims against CARIBPRO.

## II. CONCLUSIONS OF LAW

QUISQUEYA has moved for Final Default Judgment against Defendant, CARIBPRO VI IMPORTS, LLC, pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. Once a default is obtained, the complaining party must then move for a default judgment pursuant to Rule 55(b)(2). *GMAC Commercial Mortgage Corp. v. Maitland Hotel Associates, Ltd.*, 218 F. Supp. 2d 1355, 1358-59 (M.D. Fla. 2002). However, a default does not automatically warrant an entry of default judgment by the Court. *Nishimatsu Construction Co., Ltd. v. Houston National Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). Rather, "[t]here must be a sufficient basis in the pleadings for the judgment entered." *Id.*; *see also GMAC*, 218 F. Supp. 2d at 1359. When determining whether such sufficient basis exists, a court must accept all well-pleaded factual allegations as true. *Nishimatsu*, 515 F. 2d at 1206 (a "defendant, by his default, admits the plaintiff's well-pleaded allegations of fact"). In the instant case, QUISQUEYA

obtained a default against Defendant, and for the reasons set forth below, QUISQUEYA is entitled to entry of a final default judgment against Defendant on all its claims.

### A. Defendant Breached Its Contract with QUISQUEYA

Count IV of Plaintiffs' Complaint asserts a valid cause of action against Defendant for breach of contract. QUISQUEYA has alleged the elements of a breach of contract claim, which are (1) a valid contract; (2) a material breach; and (3) damages. *See Beck v. Lazard Freres & Co.*, 175 F.3d 913, 914 (11th Cir. 1999) (citing *Abruzzo v. Haller*, 603 So. 2d 1338, 1340 (Fla. 1st DCA 1992)). CARIBPRO contracted and agreed to sell, load, ship and deliver 40,000.00 bags of Portland cement in good order and condition, and as evidence of that agreement, BOUBOUL issued its Purchase Order. QUISQUEYA, acting as the broker for BOUBOUL, executed the Purchase Order on behalf of BOUBOUL. Pursuant to the terms of the Purchase Order, BOUBOUL paid CARIBPRO the amount of $122,000.00 for the purchase of the cement from Caribbean Cement and for loading, shipping and delivering the cargo of cement from Jamaica to Haiti. Pursuant to the terms of a subsequent agreement on payment terms, QUISQUEYA agreed to loan CARIBPRO the amount of $35,000.00 to secure a vessel to load, ship and deliver the cement cargo. QUISQUEYA sent a wire transfer, in the amount of $35,000.00, to CARIBPRO. CARIBPRO breached its agreements with QUISQUEYA by failing to repay the loan, in the amount of $35,000.00; by failing to secure a vessel to load, ship and deliver the cargo; and also by failing to pay the commission owed, in the amount of $8,000.00. As a direct result, QUISQUEYA has been damaged, in the amount of $35,000.00, for the funds loaned for the charter of the vessel and in the amount of

$8,000.00 in unpaid commission. As a result, QUISQUEYA is entitled to a final default judgment against Defendant on Count IV of its complaint.

### B. Defendant Has Converted Funds For Its Own Use

Count V of Plaintiffs' complaint asserts a valid cause of action against Defendant for conversion. CARIBPRO accepted a loan of $35,000.00 from QUISQUEYA to facilitate the charter of a vessel in order to load, ship and deliver said cargo of cement to BOUBOUL. Under Florida law, conversion is an "act of dominion wrongfully asserted over another's property inconsistent with his ownership therein." *Nyesa Costa Rica v. Wilson Capital Group Holdings, LLC*, 2012 WL 1492344, *4 (S.D. Fla. 2012) (citing *Warshall v. Price*, 629 So. 2d 903, 904 (Fla. 4th DCA 1993)). Thus, conversion occurs when a person with a right of possession of property demands its return and the demand is not met. *Nyesa*, 2012 WL 1492344 at *4 (citing *Pearson v. Ford Motor Co.*, 694 So. 2d 61, 69 (Fla. 1st DCA 1997)). CARIBPRO failed to reimburse the loan of $35,000.00; instead, CARIBPRO converted the money for its own use that was then property of QUISQUEYA, and QUISQUEYA has been damaged in an amount not less than $35,000.00. As a result, Plaintiff is entitled to a final default judgment against Defendant on Count V of its complaint.

### C. Defendant Has Been Unjustly Enriched

Count VI of Plaintiffs' complaint asserts a valid cause of action against Defendant for unjust enrichment. CARIBPRO accepted a $35,000.00 loan from QUISQUEYA to charter a vessel in order to load, ship and deliver said cargo of cement to BOUBOUL. The essential elements of an unjust enrichment claim are: "(1) a benefit conferred upon a defendant by the plaintiff, (2) the defendant's appreciation of the benefit, (3) the

defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof." *Nyesa*, 2012 WL 1492344 at *5 (citing *Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. 2d DCA 2006)). CARIBPRO failed to reimburse the loan of $35,000.00 from QUISQUEYA; instead CARIBPRO has kept the monies for its own benefit or use, and unjustly enriched itself. QUISQUEYA has been damaged in an amount not less than $35,000.00. As a result, Plaintiff is entitled to a final default judgment against Defendant on Count VI of its complaint. While QUISQUEYA cannot recover for both unjust enrichment and breach of contract, it has not sought additional damages for its unjust enrichment claim.

### D. Defendant Tortiously Interfered With An Advantageous Business Relationship

Count VII of Plaintiffs' complaint alleges a claim of tortious interference with advantageous business relationship against CARIBPRO. The elements of a claim for tortious interference with business relationship are (1) the existence of a business relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damages to the plaintiff as a result of the breach of the relationship. *Networkip, LLC v. Spread Enterprises*, 992 So. 2d 355, 357-58 (Fla. 3d DCA 2006) (citing *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812 (Fla. 1994) and *J.T.A. Factors, Inc. v. Philcon Servs., Inc.*, 820 So. 2d 367 (Fla. 3d DCA 2002)). QUSIQUEYA is entitled to entry of final default judgment on this claim because it has pled all of the elements of such a claim.

BOUBOUL retained QUISQUEYA to act as its broker to purchase cement to be shipped to Haiti for use in a variety of construction projects. CARIBPRO had knowledge of that relationship. As evidence of that relationship, QUISQUEYA helped secure an agreement between BOUBOUL and CARIBPRO to purchase cement to be shipped from Jamaica to Haiti. Before the purchase of cement and the loan, QUISQUEYA and CARIBPRO had entered into a Non-Circumvention Agreement to demonstrate their stated desire to work together for the purpose of arranging business and financial transactions. CARIBPRO intentionally and unjustifiably interfered with the relationship between Plaintiffs by: (a) failing to timely perform and (b) travelling to Haiti to meet directly with BOUBOUL for the purpose of excluding QUISQUEYA from the financial benefits of the transaction but also to exclude QUISQUEYA from doing future business with BOUBOUL. As a result of CARIBPRO's failure to timely perform, QUISQUEYA's business relationship with BOUBOUL has been damaged, including but not limited to loss of commissions on this transaction, but also future transactions involving BOUBOUL. However, QUISQUEYA has not presented any evidence of damages other than the loss of commission on this transaction. Thus, it may only recover those damages on this claim. As a result, QUISQUEYA is entitled to a final default judgment against Defendant on Count VII of its complaint.

### III. CONCLUSION

For the reasons set forth above;

**IT IS ORDERED that:**

1. QUISQUEYA CARGO SHIPPING CORP.'s Motion for Default Final Judgment [D.E. 25] is GRANTED;

2. QUISQUEYA CARGO SHIPPING CORP. shall recover from and against the Defendant, CARIBPRO VI IMPORTS, LLC, $35,000.00 for the unpaid loan, $8,000.00 in unpaid commission, and $425.00 for court costs, totaling $43,425.00.

3. All pending motions not otherwise ruled upon are DENIED as moot;

4. The Court will enter a separate judgment;

5. This case is CLOSED.

DONE AND ORDERED in Miami, Florida, this 22nd day of August 2013.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc: All counsel of record